VÍCTOR M. JIMÉNEZ ET AL., demandantes y recurridos, *v.* RAÚL PELEGRINA ESPINET ET AL., demandados y peticionarios.

*Número:* O-81-168      *Resuelto:* 11 de mayo de 1982

*Dubón, González & Vázquez*, abogados del peticionario; *Francisco Santiago Negrón* y *Luis E. Gandía Argüelles*, abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 4 de mayo de 1974 se celebraron unas competencias deportivas en el campo atlético de la Universidad de Puerto Rico. En ellas participaron varias escuelas, entre ellas el Colegio San Ignacio, que componían la "Puerto Rico High School Alliance".

La co-demandante Sara del Carmen Marín de Jiménez se desempeñaba entonces como maestra de la "American Military Academy". Asistió a las justas como espectadora. Su escuela no requirió su presencia en el lugar. La señora Jiménez observó las competencias desde un área detrás de una verja eslabonada. Otros espectadores se encontraban en la misma zona, la cual estaba cubierta de grama. Varios automóviles se hallaban estacionados allí.

En uno de estos automóviles, que formaban una línea recta ordenada, se hallaban dos estudiantes, Raúl Pelegrina, de la "American Military Academy" y Raquel González-Chaves, joven de 15 años y alumna del Colegio Nuestra Señora del Pilar. El auto, un M.G., pertenecía a la firma Oxford Motors Car Sales and Service Corp. El padre de Pelegrina le había prestado el vehículo a su hijo, que entonces contaba con 18 a 20 años de edad. A pesar de que Pelegrina sabía que la joven nunca había conducido un auto, la puso al volante del M.G., encendió el vehículo, colocó el primer cambio y le indicó a Raquel que levantara el pie del embrague. El auto deportivo brincó hacia adelante a alta velocidad, sin control, y fue a chocar contra la verja, causándole daños a la señora Jiménez.

La señora Jiménez, su esposo y sus padres demandaron por $243,800, más costas y honorarios de abogado, a Raúl Pelegrina y sus padres, a Raquel González-Chaves y sus padres y a la Universidad de Puerto Rico. Luego añadieron a Oxford Motors y a las compañías que alegadamente aseguraban el vehículo. La Universidad de Puerto Rico instó a continuación demanda contra tercero contra la "Puerto Rico High School Alliance" y sus miembros. La "American Military Academy" incoó a su vez demanda contra tercero contra el Colegio San Ignacio y otros.

El Colegio San Ignacio presentó una moción para que se desestimase la demanda, escrito que luego solicitó que se considerase como una moción de sentencia sumaria. A pesar de que todas las partes aceptan que no existe controversia de hechos, el tribunal de instancia denegó el 11 de febrero de 1981 la moción del Colegio San Ignacio "en vista de que existe una genuina controversia real sobre hechos que deberán ser dilucidados en juicio plenario". El Colegio San Ignacio ha acudido a este foro en recurso de *certiorari.*

Erró el tribunal de instancia al no resolver la cuestión de derecho que plantea este caso: la responsabilidad civil, si alguna, que recae sobre el Colegio San Ignacio.

■ Examinemos, en primer término, si cabe la aplicación en este caso de la teoría del riesgo, conocida también como la teoría de la responsabilidad sin culpa, del daño objetivo o del riesgo creado. La teoría del riesgo, en proceso de expansión continua, se aplica por lo general, sin embargo, a actividades generadoras de provecho económico o que permitan, por su regularidad, calcular el riesgo y asegurarlo. *Gierbolini* v. *Employers Fire Ins. Co.*, 104 D.P.R. 853 (1976); M. Fernández Martín-Granizo, *Los daños y la responsabilidad objetiva en el derecho positivo español*, Pamplona, Ed. Aranzadi, 1972, pág. 108 y ss. Es justo que una empresa de lucro o alguien empeñado en un quehacer peligroso responda usualmente de los riesgos que sus actividades creen y que puedan preverse en un orden normal, aunque no puedan evitarse con el ejercicio de la mayor prudencia. Cossío, *La causalidad en la responsabilidad civil: estudio del Derecho español*, 1966 Anuario de Derecho Civil 527, 544. Es claro que los hechos del caso presente, de índole tan singular e imprevisible, no corresponden al género de situación en que los daños deban compensarse aunque no medie culpa.

■ Hay que determinar, por tanto, si ha intervenido aquí culpa y si existe el necesario nexo causal entre el evento culposo y el daño sufrido. Culpa y causalidad son conceptos distintos. Tienen que concurrir ambos para que surja la responsabilidad civil en los casos en que es inaplicable la teoría del riesgo. Mazeaud y Mazeaud, *Traité Théorique et Pratique de la Responsabilité Civile*, 6ta ed. (por A. Tunc), París, Ed. Montchrestien, 1970, T. II, págs. 515–516, 521.

■ Hay diversas teorías sobre la culpa y su papel. Para quienes entienden el concepto de responsabilidad como una simple teoría de la distribución de los riesgos, la idea de la culpa es tan solo un criterio entre muchos para el logro de una distribución económica más justa. Cossío,

*op. cit.*, pág. 528. No exploraremos aquí los matices de este complicado concepto. Para los fines de este caso consideraremos la noción de culpa en su sentido más generalizado: "La culpa consiste en la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso." C. Rogel Vide, *La Responsabilidad Civil Extra-contractual*, Ed. Civitas, 1976, pág. 90. La diligencia exigible es la que cabe esperar del ser humano medio, el buen *pater familias*. Si el daño es previsible por éste hay responsabilidad. Si no es previsible estamos generalmente en presencia de un caso fortuito. Rogel Vide, *op. cit.*, pág. 91.

¿Hubo culpa por parte del Colegio San Ignacio en este caso? Únicamente se alega que el Colegio auspició y ayudó a organizar las justas en los terrenos que la Universidad de Puerto Rico puso a disposición de la "Puerto Rico High School Alliance". Quizá podría decirse que la prudencia manda que en este género de actividades las zonas de estacionamiento deben separarse de las áreas para espectadores, mas, ¿pudo preverse que un joven intentaría enseñarle a conducir a una niña de 15 años con el trágico resultado acaecido, de no efectuarse tal separación? El problema de la culpa en este caso tiende a mezclarse, como puede verse, con el problema del nexo causal. Presumamos, por tanto, sin resolver, que medió culpa al permitir el estacionamiento de vehículos en aquel sitio, para determinar entonces si existe el vínculo causal necesario entre el acto culposo y el daño sufrido.

Se dan dos teorías principales sobre la relación causal: la teoría de la equivalencia de las condiciones y la de la causalidad adecuada. J. Santos Briz, *Derecho de Daños*, Madrid, Ed. Revista de Derecho Privado, 1963, pág. 215 *et seq.*; Rogel Vide, *op. cit.*, pág. 67 *et seq.* Para la primera doctrina, la causa es cualquiera de las condiciones esenciales a la producción del daño. Para la segunda, la causa es la condición que ordinariamente produce el daño, según la experiencia general.

La teoría de las equivalencias tuvo el apoyo por largo tiempo de la mayoría de los comentaristas franceses, pero ello ha dejado de ser así. Mazeaud y Mazeaud, *op. cit.*, pág. 531 *et seq.* La teoría de la causalidad adecuada es la preferida también de la doctrina y la jurisprudencia españolas, excepto en el campo penal. Santos Briz, *op. cit.*, pág. 215 *et seq.*; Rogel Vide, *op. cit.*, pág. 68 *et seq.* La teoría de las equivalencias siempre ha encerrado el peligro de confundir el concepto de la causa natural con el de la causa jurídica. Cossío, *op. cit.*, pág. 530 *et seq.* En casi toda actividad humana cabe tal concatenación de causas que sin la presencia de alguna de ellas no hubiese ocurrido el daño. En el caso presente, de no haberse fabricado el M.G., o vehículo alguno, es evidente que no hubiera habido perjuicio, mas ¿basta ello para imponerle responsabilidad al fabricante? Es obvio que tenemos que concebir la causa jurídica en forma distinta a la causa física o natural. Según ha expresado el Tribunal Supremo de España, S. de 30 de enero de 1954:

> Siguiendo la doctrina jurisprudencial, acoge el concepto de una causa como la que es eficiente y se refiere, tratándose de una omisión, a la condición necesaria para que produzca el hecho que origina el daño, y esta condición es la que tiene una condición preeminente como causa del hecho dañoso, y aun cuando fueran varias las concurrentes, habría que considerar decisiva la que por sus circunstancias determina el daño.

Es necesario que del hecho culposo o negligente sea responsable, por actos directos o mediatos, el actor a quien se imputa. Ss. de 14 de junio de 1956, 3 de junio de 1957 y 5 de abril de 1960. El nexo causal puede ser roto por la interferencia de una serie causal extraña a la primera. S. de 21 de marzo de 1950; Mazeaud y Mazeaud, *op. cit.*, pág. 524 *et seq.* Por último, según afirmó el Tribunal Supremo de España en su sentencia de 9 de noviembre de 1949:

Siendo la posibilidad de prever los sucesos un concepto teóricamente amplísimo y de límites imprecisos, hay que entenderlo, en su aplicación legal y práctica, como excluyente de aquellos sucesos totalmente insólitos y extraordinarios que aunque no imposibles físicamente y, por tanto, previsibles en teoría, no son los que puede calcular una conducta prudente atenta a las eventualidades que el curso de la vida permite esperar. . . .

■ Reiteramos nuestro endoso a la teoría de la causalidad adecuada. (1) Véase: *Soc. de Gananciales* v. *Jerónimo Corp.*, 103 D.P.R. 127, 134 (1974). A la luz de los principios expuestos se apreciará que no cabe imponerle responsabilidad civil al Colegio San Ignacio. No hay base para establecer el necesario nexo causal entre el supuesto acto culposo y el daño sufrido. La causa inmediata del daño fue de naturaleza tan insólita y extraordinaria, adquirió tal matiz de causa interventora, que la conducta del recurrente no puede acarrear consecuencias de responsabilidad civil en las peculiares circunstancias de este litigio.

Por las consideraciones expuestas, *se expedirá el auto y se desestimará la demanda contra el Colegio San Ignacio.*

El Juez Asociado Señor Dávila no interviene. El Juez Asociado Señor Negrón García concurre con el resultado sin opinión.

---

(1) Debe estarse consciente de la delicadeza requerida en la aplicación, caso a caso, de esta doctrina y de las graves limitaciones que puede sufrir, al advenir en contacto con ella, la teoría de la previsibilidad. Mazeaud y Mazeaud, *op. cit.*, pág. 533.